# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NASEEM M. CHAUDHRY, M.D., | ) |
| Plaintiff, | ) |
| v. | ) No. 12-cv-5838 |
| PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Naseem Chaudhry, M.D. has moved to exclude testimony from L. Lamar Blount, offered by Provident Life and Accident Insurance Company ("Provident Life" or "Defendant"), pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). For the reasons discussed below, the Court denies Plaintiff's motion.

## BACKGROUND

Plaintiff Naseem M. Chaudhry, M.D., suffers from a deteriorative eye condition, which has impaired his ability to drive and treat his psychiatric patients. Defendant Provident Life paid total disability benefits to Plaintiff under a disability insurance policy from mid-2003 to August 2011. After Provident Life terminated plaintiff's disability benefits on August 15, 2011, Plaintiff sued Provident Life and its parent company, Unum Group ("Unum"), alleging breach of contract, waiver, and estoppel arising from the termination of Plaintiff's disability benefits. (*See* R.78,

Second Am. Compl.; *see also* R.132, Opinion granting-in-part Defs.' Motion for Summary Judgment.)[1]

Defendant disclosed Mr. L. Lamar Blount as a financial expert regarding Dr. Chaudhry's earned income. (R.144-2; *see also* R.156-1.) Mr. Blount is a licensed Certified Public Accountant, certified in Financial Forensics, Fellow of the Healthcare Financial Management Association, Licensed Insurance Agent, and Licensed Insurance Counselor. (R.144-2, at 2.) Mr. Blount offers two opinions related to this case. Specifically, Mr. Blount opines that the available records do not provide a consistent and reliable basis from which he can quantify the amounts of Plaintiff's earned income, excluding fraudulent or illegitimate income, for each of the years 2000, 2001, and 2002. (*Id.*, at 3-4, 10.) Mr. Blount also opines the available records do not provide a consistent and reliable basis from which he can quantify the amounts of Plaintiff's monthly earned income, excluding fraudulent or illegitimate income, for 2003 and continuing until Plaintiff's incarceration on August 27, 2012. (*Id.*, at 10.)

## LEGAL STANDARD FOR *DAUBERT* MOTIONS

"A district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)." *Brown v. Burlington Northern Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014); *see also Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Rule 702, governing the admissibility of expert testimony, provides:

---

[1] On July 16, 2014, the Court granted summary judgment as to Unum—a nonparty to the disputed contract—and dismissed all of Plaintiff's claims against Unum with prejudice (*See* R.132, at 46-47.) Reference to "Defendant" in this ruling, therefore refers only to Provident Life. The Court also granted summary judgment as to Provident Life on Plaintiff's claim for unreasonable and vexatious conduct and declaration of future coverage. (*See id.*, at 37, 45-46.)

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"In short, the rule requires that the trial judge ensure that any and all expert testimony or evidence admitted "is not only relevant, but reliable." *Manpower, Inc. v. Ins. Co. of Pa.* 732 F.3d 796, 806 (7th Cir. 2013) *(citing Daubert,* 509 U.S. at 589, 113 S.Ct. 2786); *see also Bielskis v. Louisville Ladder, Inc.,* 663 F.3d 887, 894 (7th Cir. 2011) (explaining that ultimately, the expert's opinion "must be reasoned and founded on data [and] must also utilize the methods of the relevant discipline"); *Lees v. Carthage College*, 714 F.3d 516, 521 (7th Cir. 2013) (explaining the current version of Rule 702 essentially codified *Daubert* and "remains the gold standard for evaluating the reliability of expert testimony"). The *Daubert* principles apply equally to scientific and non-scientific expert testimony. *See Manpower, Inc.*, 732 F.3d at 806 (citing *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147–49, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

Under the expert-testimony framework, courts perform the gatekeeping function of determining whether the expert testimony is both relevant and reliable prior to its admission at trial. *See Manpower, Inc.*, 732 F.3d at 806; *Lees*, 714 F.3d at 521; *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) ("To determine reliability, the court should consider the proposed expert's full range of experience and training, as well as the methodology used to arrive [at] a particular conclusion."). In doing so, courts "make the following inquiries before admitting expert testimony: first, the expert must be qualified as an expert by knowledge, skill, experience, training, or education; second, the proposed expert must assist the trier of fact in determining a

relevant fact at issue in the case; third, the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and fourth, the expert must have reliably applied the principles and methods to the facts of the case." *Lees*, 714 F.3d at 521-22; *see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013); *Pansier*, 576 F.3d at 737. A district court's evaluation of expert testimony under *Daubert* does not "take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (citing *Daubert,* 509 U.S. at 596). Once it is determined that "the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Id*.

In addition, as the Seventh Circuit teaches:

> Where the gatekeeper and the factfinder are one and the same – that is, the judge – the need to make such decisions prior to hearing testimony is lessened. *See United States v. Brown*, 415 F.3d 1257, 1268-69 (11th Cir. 2005). That is not to say that the scientific reliability requirement is lessened in such situations; the point is only that the court can hear the evidence and make its reliability determination during, rather than in advance of, trial. Thus, where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702.

*In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006); *see also Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010) (observing that "the court in a bench trial need not make reliability determinations before evidence is presented" because "the usual concerns of the rule—keeping unreliable expert testimony from the jury—are not present in such a setting"); *Brown*, 415 F.3d at 1269 ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself").

**ANALYSIS**

Plaintiff seeks to exclude all testimony of Mr. L. Lamar Blount. As an initial matter, Plaintiff does not question Mr. Blount's qualifications as he states Mr. Blount "would likely be qualified as an expert in the field of financial forensics." (R.144-1, at 3; *see also* R.156, at 2.) Plaintiff does, however, question the relevance of Mr. Blount's testimony.[2] Specifically, Plaintiff alleges that Mr. Blount's testimony is not relevant "because the calculation of Plaintiff's residual disability benefits is calculable to 100% loss under every alternate calculation under the terms of the Policy." (R.144-1, at 4.)

Under the Federal Rules of Evidence, testimony is relevant as long as it "has any tendency to make a fact more or less probable" than it would otherwise be. *See* Fed. R. Evid. 401. The evaluation of relevance for expert testimony under *Daubert* is a "liberal relevance standard." *Stollings*, 725 F.3d at 768 (finding expert testimony relevant under *Daubert's* "liberal relevance standard"); *see also U.S. v. Bowling*, 770 F.3d 1168, 1175 (7th Cir. 2014) (citing *Daubert*, 509 U.S. at 587) (holding that the basic standard of relevance under Rule 401 is "a liberal one"). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591.

Mr. Blount's testimony is relevant under *Daubert* because it helps the trier of fact determine whether Chaudhry should be entitled to a benefit under the Policy—a benefit that is calculated based, in part, on Chaudhry's income prior to his disability. (*See* R.63-2, Ex. A,

---

[2] Although Plaintiff initially alleges that Mr. Blount's testimony is both unreliable and irrelevant, Plaintiff's arguments are only directed to the relevance—and not the reliability—of Mr. Blount's opinions. *See e.g.,* R.144-1, at 4 ("Mr. Blount's testimony is not relevant because …"); *id.*, at 8 ("Mr. Blount's testimony is therefore not relevant because …"); *id.*, at 9 ("Plaintiff neither admits nor denies the allegations of income tax underreporting but seeks to exclude them under the Rules of Evidence as irrelevant to the issues of the case and unduly prejudicial and confusing of the issues that are relevant"); *id.* ("To allow an expert to draw negative inferences from an irrelevant issue violates Federal Rule of Evidence 403 …"); *id.* at 11 ("Mr. Blount's testimony should therefore be excluded as not relevant and therefore not helpful to the trier of fact in this case").

Disability Income Policy No. 06-337-4060396 ("Policy"); *see also* R.132, at 5). In addition, the Court found on summary judgment that genuine issues of material fact exist regarding whether the information Provident Life received after April 2007 justified reevaluating Plaintiff's disability claim under the Residual Disability provisions. (R.132, at 41.) The information Provident Life received after April 2007 includes some of the same information Mr. Blount relied on in forming his opinion—e.g., Plaintiff's guilty plea to Medicare fraud, additional billing codes obtained from federal government, and pre-disability earnings. (*Id.*; R.156-1, Blount Exp. Rep., Appendix A, Sources & Documents Reviewed.) As such, Mr. Blount's opinion is relevant to the issues before the trier of fact.

Plaintiff's complaints regarding Mr. Blount's testimony go to the weight of the evidence and not its admissibility. Plaintiff asserts, for example, that Plaintiff's income tax records "represent the best evidence of Plaintiff's pre-disability income"—as opposed to the records upon which Mr. Blount relies. (R.144-1, at 4.) Plaintiff then proceeds to propose an alternate calculation of earned income for 2000-2002 and further presents calculation of Residual Disability under the Policy. (*Id.*, at 4-8; *see also* R.164, at 3-4.) Indeed, Plaintiff's proposed alternative calculations only bolster the fact that Mr. Blount's opinions regarding his attempts to calculate Plaintiff's earned income are relevant to the issues in this case. Plaintiff also presents a formula for calculation of Residual Disability under the Policy which relies on an amount calculated for loss of monthly income and prior monthly income. (*See* R.144-1, at 6 (citing R.63-2, Ex. 1, Policy, at 10).) Mr. Blount opines, however, that Chaudhry's monthly income, excluding fraudulent or illegitimate income, cannot be quantified based on the available records because they do not provide a consistent and reliable basis for such calculations. (R.156-1, at 10.) Mr. Blount's opinions are, therefore, relevant to the issues in this case and the proper

6

method to attack the accuracy of those opinions is "with the familiar tools of vigorous cross-examination, presentation of contrary evidence." *See Lapsley*, 689 F.3d at 805. Plaintiff's alternative calculations are issues for the trier of fact to decide.

Plaintiff makes various arguments related to individual findings made by Mr. Blount that serve as a basis for his opinion. First, Plaintiff argues that Mr. Blount's alleged opinion regarding whether Plaintiff paid the proper amount of income taxes … is not even an issue in this case." (R.144-1, at 8.) Plaintiff's argument is misplaced. Mr. Blount does not opine that Plaintiff paid an improper amount of taxes. Instead, Mr. Blount opines that the accuracy of Plaintiff's tax returns submitted in 1999-2002 is questionable and that this—along with other findings—makes accurate calculation of Plaintiff's earned income during that period impossible. (R.156-1, at 6.) As such, Mr. Blount's findings as related to Plaintiff's tax returns provide the basis for his opinion that quantification of Plaintiff's earned income is not possible. As discussed above, Plaintiff's earned income during that period is relevant to a determination of his coverage under the Policy.

Second, Plaintiff argues that Mr. Blount's findings based on allegations made by the government in the Medicare Fraud case are improper because he should only consider the findings of fact adopted in Plaintiff's guilty plea seven years later. (R.144-1, at 9-10.) Plaintiff argues that Mr. Blount's reliance on these findings is unfair and prejudicial, implicating Federal Rule of Evidence 403. An expert witness, however, is permitted to base an opinion on evidence he has not personally observed but of which he has become aware. *See* Fed. R. Evid. 703. To serve as the basis of the expert's opinion, evidence need not meet any specific standard of reliability—or even be admissible on its own—so long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject...." *Id.* The

expert may testify about the underlying facts if they are admissible in their own right; if they are not, he may disclose them only to the extent "their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id*.; *see United States v. Bradley,* 145 F.3d 889, 893 (7th Cir. 1998) ("Relevant evidence is inherently prejudicial; only where the unfair prejudice created by its admission substantially outweighs its probative value should the trial court, in the exercise of its discretion, exclude the evidence ").

Plaintiff disputes the specific findings upon which Mr. Blount relies that come from doctors' reports in the Government's Sentencing Memo of July 23, 2010, filed in relation to Plaintiff's previous Medicare fraud case. Plaintiff does not argue that these findings are not reasonably relied on by experts in the financial field. Nor does Plaintiff question the reliability of the government's reports and information they contain. Indeed, Plaintiff's own vocational expert relied upon the same Government Sentencing Memo in her evaluation of Plaintiff's occupation and job duties. (*See* R.149-1, at 1.) Instead, Plaintiff alleges that Mr. Blount's reliance on the allegations is prejudicial because "they were never adopted in the guilty plea and were therefore dropped." (R.144-1, at 10.) Without anything more, however, Plaintiff has not alleged a prejudicial effect that substantially outweighs evaluation of Mr. Blount's opinion. Rule 703 entitles experts to rely on hearsay evidence in forming their opinions, and assuming Defendant lays an adequate foundation, Mr. Blount can additionally discuss that evidence as a basis for his opinion before the Court. *See* Fed. R. Evid. 703; *see also N.L.A. v. Holder*, 744 F.3d 425, 440 (7th Cir. 2014) ("Federal Rule of Evidence 703 allows experts to rely on hearsay if it is the kind of facts or data upon which 'experts in the field would reasonably rely'"). The mere fact that Mr. Blount's reliance on these allegations serves as a basis for his opinion that he cannot reliably quantify Plaintiff's earned income is not unfairly prejudicial. Furthermore, because this

8

is a bench trial, the Court can address any issues of foundation and admission of the evidence, should Defendant move to do so, at trial. The Court can also assess at trial whether Defendant can establish these facts. As such, the Court declines to exclude any expert testimony relying upon the doctor's reports in the Government's Sentencing Memo at this stage.

Plaintiff also argues that Mr. Blount's finding related to Plaintiff's post-disability activities constituting "work" is beyond his expertise as a tax expert. (R.144-1, at 10.) This argument is in direct contradiction, however, to Plaintiff's additional argument that the Court should exclude Mr. Blount's testimony regarding Plaintiff's post-disability earnings because Mr. Blount "conveniently fails to assess whether any of this income was for work similar to Plaintiff's pre-disability work as a professional psychiatrist traveling between nursing facilities, or if the post-disability income was for more sedentary work as an administrator not requiring the same good eyesight of the pre-disability occupation." (*Id.*, at 10-11.) Plaintiff does not argue that a determination of post-disability earnings is irrelevant, nor does he argue that Mr. Blount's testimony regarding such earnings is based on an unreliable method. Instead, Plaintiff argues that Mr. Blount did not use the Policy definition of post-disability work that limits calculating Residual Disability to "Monthly Income in your occupation for each month of Residual Disability being claimed." (*Id.*, at 10.) As with the previous issues raised by Plaintiff, this speaks to the weight of Mr. Blount's testimony and not to its relevance or reliability.[3]

---

[3] Plaintiff's additional complaint that Mr. Blount did not consider Plaintiff's wife W2, which was in Defendant's possession, in forming his opinion speaks more to the weight and credibility of Mr. Blount's testimony, rather than to its relevance or reliability. Determination of Plaintiff's 2002 earned income is relevant to the issues in the case and Plaintiff does not argue that Mr. Blount failed to apply the facts of this case to his expertise, but instead argues that Defendant's had the W2 in their possession and implies that Mr. Blount did not.

9

## CONCLUSION

For the reasons discussed in detail above, the Court denies Plaintiff's motion to exclude the testimony of Defendant's expert, Mr. Blount.

DATED: April 14, 2015

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge