**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NASEEM M. CHAUDHRY, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-cv-5838 |
| | ) | |
| PROVIDENT LIFE AND ACCIDENT | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Naseem Chaudhry, M.D. has moved to exclude testimony from Mr. Timothy J. Riley and Dr. Andrew Segovia Kulik, both offered by Provident Life and Accident Insurance Company ("Provident Life" or "Defendant"), pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). For the reasons discussed below, the Court denies Plaintiff's motions.

**BACKGROUND**

Plaintiff Naseem M. Chaudhry, M.D., suffers from a deteriorative eye condition, which has impaired his ability to drive and treat his psychiatric patients. Defendant Provident Life paid total disability benefits to Plaintiff under a disability insurance policy from mid-2003 to August 2011. After Provident Life terminated Plaintiff's disability benefits on August 15, 2011, Plaintiff sued Provident Life and its parent company, Unum Group ("Unum"), alleging breach of contract, waiver, and estoppel arising from the termination of Plaintiff's disability benefits. (*See* R.78,

Second Am. Compl.; *see also* R.132, Opinion granting-in-part Defs.' Motion for Summary Judgment.)[1]

I.      **Mr. Timothy J. Riley**

Defendant disclosed Mr. Timothy J. Riley as an expert in vocational assessment—determining vocational and employment issues related to application of a long term disability policy. (R.142-2; *see also* R.159-1.) Mr. Riley is a Certified Rehabilitation Counselor, Certified Vocational Expert, Licensed Professional Counselor, and a Certified Private Vocational Rehabilitation Specialist. (R.159-1, at 2.) Mr. Riley offers various opinions related to this case. First, Mr. Riley opines that Mr. Chaudhry performed the material and substantial duties of a psychiatrist. (*Id.*, at 5.) Mr. Riley further opines that Mr. Chaudhry was fully capable of continuing to work as a psychiatrist after his medical diagnosis, that he continued to perform his material and substantial duties until summer of 2006, and that he retained those abilities after that time at least until the time of his revoked medical license (in 2012). (*Id.*)

II.     **Dr. Andrew Segovia Kulik, M.D.**

Defendant also disclosed Dr. Andrew Segovia Kulik, M.D. as an expert in occupational assessment, including identification of the material and substantial duties of general and geriatric psychiatrists. (R.143-2; *see also* R.158-1.) Dr. Kulik is board certified in general psychiatry with additional board certification in forensic psychiatry. (R.143-2, at 3.) Dr. Kulik serves as a member of the American Psychiatric Association and the American Academy of Psychiatry and the Law. (*Id.*) He also serves as the Interim Chairman of the Department of Psychiatry for the

---

[1] On July 16, 2014, the Court granted summary judgment as to Unum—a nonparty to the disputed contract—and dismissed all of Plaintiff's claims against Unum with prejudice (*See* R.132, at 46-47.) Reference to "Defendant" in this ruling, therefore refers only to Provident Life. The Court also granted summary judgment as to Provident Life on Plaintiff's claim for unreasonable and vexatious conduct and declaration of future coverage. (*See id.*, at 37, 45-46.)

Cook County Health and Hospital System which requires him to supervise and manage mental health professionals, including many psychiatrists. (*Id.*) Dr. Kulik offers an opinion "within a reasonable degree of medical and psychiatric certainty" that "Dr. Chaudhry has functioned as a general psychiatrist before and after his reported disability." (*Id.*, at 2.) Dr. Kulik further finds that Dr. Chaudhry "continued to perform the material and substantial duties of his occupation, even if characterized as a geriatric psychiatrist, after January of 2003." (*Id.*)

## LEGAL STANDARD FOR *DAUBERT* MOTIONS

"A district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993)." *Brown v. Burlington Northern Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014); *see also Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Rule 702, governing the admissibility of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"In short, the rule requires that the trial judge ensure that any and all expert testimony or evidence admitted "is not only relevant, but reliable." *Manpower, Inc. v. Ins. Co. of Pa.* 732 F.3d 796, 806 (7th Cir. 2013) *(citing Daubert,* 509 U.S. at 589, 113 S.Ct. 2786); *see also Bielskis v. Louisville Ladder, Inc.,* 663 F.3d 887, 894 (7th Cir. 2011) (explaining that ultimately, the expert's opinion "must be reasoned and founded on data [and] must also utilize the methods of the relevant discipline"); *Lees v. Carthage College*, 714 F.3d 516, 521 (7th Cir. 2013)

3

(explaining the current version of Rule 702 essentially codified *Daubert* and "remains the gold standard for evaluating the reliability of expert testimony"). The *Daubert* principles apply equally to scientific and non-scientific expert testimony. *See Manpower, Inc.*, 732 F.3d at 806 (citing *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147–49, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

Under the expert-testimony framework, courts perform the gatekeeping function of determining whether the expert testimony is both relevant and reliable prior to its admission at trial. *See Manpower, Inc.*, 732 F.3d at 806; *Lees*, 714 F.3d at 521; *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) ("To determine reliability, the court should consider the proposed expert's full range of experience and training, as well as the methodology used to arrive [at] a particular conclusion."). In doing so, courts "make the following inquiries before admitting expert testimony: first, the expert must be qualified as an expert by knowledge, skill, experience, training, or education; second, the proposed expert must assist the trier of fact in determining a relevant fact at issue in the case; third, the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and fourth, the expert must have reliably applied the principles and methods to the facts of the case." *Lees*, 714 F.3d at 521-22; *see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013); *Pansier*, 576 F.3d at 737. A district court's evaluation of expert testimony under *Daubert* does not "take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (citing *Daubert,* 509 U.S. at 596). Once it is determined that "the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Id.*

In addition, as the Seventh Circuit teaches:

> Where the gatekeeper and the factfinder are one and the same – that is, the judge – the need to make such decisions prior to hearing testimony is lessened. *See United States v. Brown*, 415 F.3d 1257, 1268-69 (11th Cir. 2005). That is not to say that the scientific reliability requirement is lessened in such situations; the point is only that the court can hear the evidence and make its reliability determination during, rather than in advance of, trial. Thus, where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702.

*In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006); *see also Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010) (observing that "the court in a bench trial need not make reliability determinations before evidence is presented" because "the usual concerns of the rule—keeping unreliable expert testimony from the jury—are not present in such a setting"); *Brown*, 415 F.3d at 1269 ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself").

## ANALYSIS

Plaintiff seeks to exclude all testimony of Mr. Timothy J. Riley and Dr. Andrew Segovia Kulik. As an initial matter, Plaintiff does not challenge either expert's qualifications. (*See* R.142-1, at 3 ("Here, given Dr. Riley's background, he would likely be qualified as an expert in the field of Vocational Assessment"); R.143-1, at 3 ("Here, given Dr. Kulik's background, he would likely be qualified as an expert in the field of forensic psychiatry").) Plaintiff does, however, question the reliability of both Mr. Riley's testimony and Dr. Kulik's testimony. Because Mr. Riley and Dr. Kulik's opinions both focus on Dr. Chaudhry's vocation as a psychiatrist or geriatric psychiatrist and because Plaintiff's arguments challenging the reliability of each of these expert's opinions are essentially repeated verbatim as to Mr. Riley and Dr. Kulik, the Court addresses the *Daubert* motions collectively.

Plaintiff argues that Mr. Riley and Dr. Kulik are unreliable because they ignored evidence relevant to their opinions. Namely, Plaintiff argues that the experts ignored the policy definition of "your occupation" and looked generally at the duties for a psychiatrist or a geriatric psychiatrist rather than looking to the specific duties performed by Dr. Chaudhry. (*See* R.142-1, at 4-5; R.143-1, at 4-5; *see also* R.167, at 4-9; R.166, at 4-9.) Plaintiff also argues that in forming their opinions as to Dr. Chaudhry's ability to perform his occupation after 2003, Mr. Riley and Dr. Kulik ignored the different practice setting of Dr. Chaudhry's work in Ohio in 2005 through 2006 and further ignored Provident Life's previous finding that Dr. Chaudhry was totally disabled and arrived at a different conclusion without providing an explanation for the disparity. (*See* R.142-1, at 4, 7; R.143-1, at 4, 6-7.)

A challenge to the reliability of an expert opinion under *Daubert* "is primarily a question of the validity of the methodology employed by [the] expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc.*, 732 F.3d at 806. "The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment." *Id.* (citations omitted). None of Plaintiff's arguments target the methodology employed by Mr. Riley or Dr. Kulik. Indeed, in arguing that methodology must be repeatable in order to be scientifically valid, Plaintiff states when compared to Provident Life's previous vocational assessments, Mr. Riley and Dr. Kulik's opinions "demonstrate that many different experts reviewed the same material and came to different conclusions." (R.142-1, at 8; R.143-1, at 7.) Plaintiff does not question the qualifications of Mr. Riley or Dr. Kulik and does not challenge the methodologies they employed. Plaintiff simply disagrees with the conclusions that Mr. Riley and Dr. Kulik reached. Arrival at

different conclusions, based on applying an individual's expertise to similar facts is not an appropriate basis for a *Daubert* challenge of a vocational opinion. An expert need only show that the methodology utilized is acceptable for vocational analysis, not that another vocational expert looking at the same information would reach the same conclusion. *See Daubert*, 509 U.S. at 593-94 (explaining the fourth factor used to evaluate the reliability of expert testimony of "whether the method is generally accepted in the relevant scientific community").

Mr. Riley and Dr. Kulik utilized their undisputed expertise and reviewed Dr. Chaudhry's medical information and information related to his medical practice. Mr. Riley and Dr. Kulik then applied their expertise—Mr. Riley in the field of Vocational Assessment and Dr. Kulik in the field of Forensic Psychiatry—to the facts reviewed in order to arrive at their conclusions regarding Dr. Chaudhry's vocation and continuing work capabilities in view of his functional limitations. Indeed, Mr. Riley and Dr. Kulik each reviewed extensive records to determine Dr. Chaudhry's functional limitations including Dr. Chaudhry's own testimony and documentation of his medical practice and patient billings, tax records, records related to Federal Medicare fraud, records related to State of Ohio Bureau of Worker Compensation Investigation and Pleading, depositions of Dr. Chaudhry's family members, deposition of Mahmood Baig, surveillance reports from 2004-2010, the report and deposition of Susan A Entenberg—Plaintiff's vocational expert, Provident Life internal records and reviews, various pleadings and discovery documents from this case. (*See* R.142-2, at 1-2; R.159-1, at 1-2 (Dr. Riley); R.143-2, at 4; R.158-1, at 3 (Dr. Kulik).) Dr. Riley also reviewed medical records and depositions from Drs. Tabbut and Geiser, definitions for "psychiatrist" from the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT") and other handbooks relevant to job descriptions. (*See* R.142-2, at 1-2; R.159-1, at 1-2.) These methodologies are appropriate for vocational experts. *See Hale v. Gannon*, No.

7

1:11-cv-277-WTL-DKL, 2012 WL 3866864, at *4-5 (S.D. Ind. Sept. 5, 2012) (finding vocational expert's methodology to be scientifically reliable where expert derived functional limitations from medical records; applied light work limitations from the DOT; used the Bureau of Labor Statistics to determine wages; and utilized a scientific report regarding work-life expectancy and cited all of these sources in her report).

Plaintiff's argument that Mr. Riley and Dr. Kulik ignored the Policy definition of "your occupation" and improperly focused on general occupational definitions, does not go to the reliability and admissibility of the experts' opinions. (*See* R.142-1, at 4; R.167, at 4-9; R.143-1, 4; R.166, at 4-9.) In support of his assertion that reference to general occupation definitions is a "parlor trick", Plaintiff relies on a disability insurance policy disputed in *Rahman, M.D. v. Paul Revere Life Ins. Co.*, 684 F.Supp. 192 (N.D. Ill. 1988). (*See* R.166, at 4-5; R.167, at 4-5.) Plaintiff's reliance on *Rahman* is misplaced. In *Rahman*, the plaintiff—an emergency cardiologist—suffered a leg injury in a car accident that did not heal properly resulting in his inability to run. *Rahman*, 684 F.Supp. at 193. The court was looking at the evidence submitted by the parties during summary judgment to determine if genuine issues of fact existed surrounding the nature of plaintiff's pre-injury occupation as an emergency cardiologist. *Id.*, at 196. In particular, the court addressed the defendant insurance company's dispute as to whether an essential aspect of Dr. Rahman's pre-injury practice was to run to his patients. *Id.* at 194. The doctor in *Rahman—*without reviewing any of the plaintiff's personal information—opined that "the ability of a cardiologist to run to emergency cardiac patients is not a substantial and material function, duty, or responsibility of the practice of medicine in the field of … cardiology." *Id.*, at 196. The district court found that the expert's opinion did not create a genuine issue of material fact because it did not controvert the plaintiff's statement that an essential aspect of the

plaintiff's pre-injury practice as an emergency cardiologist included his ability to run. *Id.* at 196-97. The procedural posture of this case is inapposite to *Rahman*, as here Plaintiff is challenging the admissibility of Mr. Riley's and Dr. Kulik's opinions in a *Daubert* motion, not the ultimate determination of the factual issues in dispute and which arguments carry the day. For the same reasons, Plaintiff's reliance on *Stender v. Provident Life and Accident Ins. Co.*, No. 98 C 1056, 2000 WL 875919 (N.D. Ill. June 29, 2000), is also misplaced. In *Stender,* the plaintiff challenged defendant—Provident Life's—denial of disability benefits after having paid them for a period of time. *Stender*, 2000 WL 875919, at *2-3. The plaintiff filed for summary judgment, arguing that the only issue for the court to resolve was whether the plaintiff's post-disability occupation differed from his pre-disability occupation. *Id.*, at *3. Indeed, the district court in *Stender* recognized that in *Rahman* "the issue to be resolved was which of two occupations, a specialty or general field, was the insured performing at the time of his injury or disability." *Id.*, at *5. As noted above, a *Daubert* motion is not the appropriate stage to resolve factual issues in dispute. Plaintiff's arguments and reliance on *Rahman* and *Stender*—while they may have merit at trial—are inappropriate at this stage.

Plaintiff's additional arguments that Mr. Riley and Dr. Kulik ignored the different practice setting of Dr. Chaudhry's work in Ohio in 2005 through 2006 and further ignored Provident Life's previous finding that Dr. Chaudhry was totally disabled fare no better. (*See* R.142-1, at 4, 7; R.143-1, at 4, 6-7.) As discussed above, both Mr. Riley and Dr. Kulik reviewed extensive documentation relevant to Dr. Chaudhry's medical practice and his functional limitations and arrived at an opinion based on their review. Scrutinizing the assumptions, reasoning, and conclusions generated by each expert after reviewing the documents made available to them is the duty left to the trier of fact—in this case, the duty of this Court—during

9

the upcoming bench trial. *See Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.*, ___ F.3d ___, 2015 WL 1434724 (7th Cir. 2015) (finding that after fulfilling its gatekeeping function, the district court "properly scrutinized each expert's assumptions, reasoning, and conclusions, as [its] duty as the trier of fact"). Courts only look to the relevance and reliability of the opinions presented in addressing *Daubert* motions. *See Manpower, Inc.*, 732 F.3d at 806 (explaining that under the expert-testimony framework, courts perform the gatekeeping function of determining whether the expert testimony is both relevant and reliable prior to its admission at trial); *id.* (reliability is an assessment of the validity of methodology, not the quality of the data used in applying the methodology or the conclusions generated). Plaintiff has neither highlighted problems with the qualifications for each expert, nor concerns with their methodologies. Plaintiff's arguments go to the substance and accuracy of the conclusions generated, an issue that he can explore through vigorous cross-examination at trial. *See Lapsley*, 689 F.3d at 805. This Court finds the methodology employed and the opinions proferred by Mr. Riley and Dr. Kulik reliable.

## CONCLUSION

For the reasons discussed in detail above, the Court denies Plaintiff's motions to exclude the testimony of Defendant's expert, Mr. Riley and Defendant's expert, Dr. Kulik..

**DATED:**     **April 17, 2015**            ENTERED

                                                        _____
                                                        AMY J. ST. EVE
                                                        United States District Court Judge